UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOHAMED KAZKAZ, ET AL.

Defendants.

_____/

Case No. 23-20022

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER: GRANTING IN PART AND DISMISSING IN PART EMERGENCY MOTIONS: [ECF Nos. 29, 81, and 95]

### I.     Introduction

The Defendants in the above captioned criminal case face charges for a fraud and money laundering scheme totaling $11 million. The below captioned Emergency Motions arise out of the Government's seizure of currency from several third-party bank accounts and holds placed on those accounts. The accounts belong to National Restaurant Chain No. 1 ("Restaurant Group Petitioner") and associated entities described below.

The Government's actions were precipitated by its Ex Parte Application for Post-Indictment Restraining Order pursuant to 21 U.S.C. § 853(e)(1)(A). [ECF No. 26]. The Court entered the Post-Indictment Restraining Order ("Restraining Order") on March 30, 2023. In relevant part, it permitted the Government to restrain funds

1

traceable to a cashier's check for $1,445,000 that Mohamed Kazkaz, a criminal defendant in this case, remitted to National Restaurant Chain No. 1 ("Company" or "National Restaurant Chain No. 1"). [ECF No. 28, PageID.109]. Since then, the Government placed holds on and restrained funds from several bank accounts belonging to third parties, prompting them to file the Emergency Motions described below.

These filings include: (1) Emergency Motion for Return of Property [ECF No. 29] by National Restaurant Chain No. 1 (hereinafter "Restaurant Group Petitioner"); (2) Emergency Motion for Return of Property Illegally Seized From Non-Restaurant Petitioners [ECF No. 81] by Advertising and Production Fund, Inc., Food Group, LLC, and Real Estate Development, LLC (hereinafter "Non-Restaurant Group Petitioners") [ECF No. 81]; and National Restaurant Chain No. 1's Supplemental Motion for Modification of Post-Indictment Restraining Order, For the Immediate Release and/or Return of Property Illegally Seized Thereby, and For a Hearing [ECF No. 94]. There were responses and replies filed related to all three motions. The Court ordered supplemental briefing on due process issues raised in ECF No. 29. See [ECF No. 37]. It held a hearing for ECF No. 29 ("Petition 1") on April 11, 2023, and heard ECF Nos. 81 ("Petition 2") and 95 ("Petition 3") on June 9, 2023.

Having heard oral argument, reviewed all the pleadings, and for the reasons stated below, the Court will **DISMISS WITHOUT PREJUDICE** the portions of

Petitions 1-3 that request an evidentiary/probable cause hearing and return of property. The Court **GRANTS** the portions of the motion that request modification of the Restraining Order. If petitioners seek to refile the emergency motions or any other motions, they must do so in the civil forfeiture proceeding associated with this case captioned *United States v. $67,344.93 remitted to the United States Marshals Service from Chase Account ending in 0852*, et al., [Dkt # 23-cv-11368].

## II.    Factual Background

The original indictment was filed on January 11, 2023. It described a fraudulent Medicare scheme allegedly perpetuated by Defendants Mohamed Kazkaz and Ziad Khalel. [ECF No. 1]. The Government filed a First Superseding Indictment on March 15, 2023, it charged Mohamed Kazkaz and Ziad Khalel with: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C § 1349 (Count 1); Conspiracy to Pay and Receive Health Care Kickbacks in violation of 18 U.S.C § 371 (Count 2); and Payment of Kickbacks and Bribes in Connection with a Federal Health Care Program in violation of 42 U.S.C § 1320a-7b(b)(2)(A) (Counts 3-4). [ECF No. 24]. Finally, only Kazkaz was charged with Engaging in Monetary Transactions Exceeding $10,000 in Criminally Derived Property in violation of 18 U.S.C § 1957 (Counts 5-10). [Id].

As part of Counts 5-10, the First Superseding Indictment alleged that, on January 21, 2023, Kazkaz remitted a cashier's check for $1,445,000 to National

Restaurant Chain No. 1 ("hereinafter "Count 9 Funds") [ECF No. 24, PageID.76]. [1]

The forfeiture allegations of the First Superseding Indictment stated that:

> as a result of Counts 5-10, as set forth in this Indictment, Defendants Mohamed Kazkaz and Ziad Khalel shall forfeit to the United States, pursuant to Title 18 United States Code, Section 982(a)(1): any property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of Defendants' Title 18 United States Code, Sections 1349 and 371, and Title 42, United States Code, Section 1320a-7b offenses; and any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957, or any property traceable to such property.

[ECF No. 24, PageID.78]. The forfeiture allegations also stated: "the grand jury expressly finds that there is probable cause that a nexus exists between the conduct alleged in counts 1-4 and the funds referenced in Counts 5-10 [the $1.445 million cashier's check]." [ECF No. 24, PageID.78]. The $1.445 million cashier's check is the currency referenced in Counts 5-10 as having a nexus with the criminal activity. The indictment designates as forfeitable any property traceable to the cashier's check; it identifies the property as subject to forfeiture under 18 U.S.C 982(a)(1) and (a)(7). [ECF No. 40, PageID.288]. These allegations identify the $1.445 million cashier's check Kazkaz remitted to National Restaurant Chain No. 1, but they do not mention any of the third-party petitioners' bank account or funds seized therein.

---

[1] The Government relies on an affidavit executed by Giorgio Bertucci, a Forensic Accountant with the FBI Detroit Division to support this allegation. Mr. Bertucci claims that the Count 9 funds were deposited in Restaurant Petitioner's account ending in 0852. [ECF No. 33-1, PageID.205-206].

Finally, in a section entitled "Substitute Assets," the forfeiture allegations stated that,

> If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant . . . has been transferred or sold to, or deposited with a third party . . . it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18 United States Code, Section 982(b), to forfeit any other property of Defendant(s), up to the value of the forfeitable property described above.
>
> The government shall also seek a forfeiture money judgment from Defendants for a sum of money representing the total amount of proceeds obtained as a result of Defendant's violations of United States Code, Sections 1349 and 371, and Title 42, United States Code, Section 1320a-7b offenses, as alleged in this Indictment.

[Id]. The Government contemplates restraining substitute assets and seeking a money judgment from Defendants if the traceable funds are transferred to a third party. The Government filed a Second Superseding Indictment on April 19, 2023. It contains the same allegations described in the First Superseding Indictment, but it adds charges against Mustafa Abdul-Karim Hares, Gemela Ali, and Geraldine Letman for Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C § 1349 (Count 1).

This Court entered the Restraining Order on March 16, 2023, allowing the United States to restrain funds where there was probable cause to believe that the funds were the product of Dr. Kazkaz's alleged fraud and there was a potential for the money to be dissipated before trial. The Restraining Order also subjects to restraint the: "[1]

Count 9 Funds: $1,445,000 in funds written by cashier's check to National Restaurant Chain #1 remitted by Mohamed Kazkaz on January 18, 2023; . . . [2] All Funds on Deposit Funding and Attributable to that Cashier's Check; and (in the event that check has been deposited) [3] All Funds up to $1,445,000 traceable to that Cashier's Check." [ECF No. 28, PageID.109]. It directs:

> any person or entity who has an interest or control over the Subject Property must deliver it to the United States Marshals Service – to be restrained and held in the Seized Asset Deposit Fund – until further order of the Court; each entity from whom the above referenced Cashier's Checks were issued—unless the Cashier's Check was deposited with another entity—must reissue a check for the total amount stated in the original Cashier's Check, made payable to the United States Marshal Service (USMS) upon presentation of this Order.

[ECF No. 28, PageID.110]. The Restraining Order requires that either: all traceable funds up to $1.445 million be delivered to the USMS or that Kazkaz reissue a check to the USMS for the total amount of the original Cashier's Check.

The same day the Restraining Order was issued, Government officials allegedly "stormed" Restaurant Group Petitioner's headquarters and demanded payment of "$1.4 million." [ECF No. 81, PageID.660]. Restaurant Group Petitioner allegedly provided the Government with all bank statements and contends that the traceable funds had been expended between January 30, 2023, and February 15, 2023. [ECF No. 81, PageID.660]. Undeterred, the Government eventually seized several third-party bank accounts, placing $1,445,000 holds on two accounts ending in 0852 ("Savings Account") and 7885 ("Checking Account"). [ECF No. 95,

PageID.901]. The Government also seized Restaurant Group Petitioner's general operating account ending in 7893 ("Operating Account") and its Chase holding account number 7935 ("Holding Account"). It placed a hold of $405,000 on the Operating Account and a hold of $29,300 on the Holding Account. [Id]. It appears that the Government allegedly withdrew a $358,108.82 from Restaurant Group Petitioner's bank accounts and deposited it with the U.S. Marshall Service, although it is unclear which particular account was affected by this particular seizure. [ECF No. 103, PageID.946]. Per the First Forfeiture Bill of Particulars, the Government withdrew funds from several other Restaurant Group Petitioner accounts as well, including: (1) $67,344.93 from Restaurant Group Petitioner's Savings Account ending in 0852; (2) $54,499.93 from Restaurant Group Petitioner's Checking Account ending in 7885; (3) $285,000 from Restaurant Group Petitioner's Operating Account ending in 7893; and (4) $18,608.89 from Restaurant Group Petitioner's Holding Account ending in 7935. See First Forfeiture Bill of Particulars [ECF No. 102, PageID.942]. Collectively, the Court will refer to the funds listed in the First Forfeiture Bill of Particulars belonging to third party petitioners as the "seized funds."

Finally, the Government placed holds on multiple accounts of Non-restaurant Group Petitioners. Non-Restaurant Group Petitioners say the Government also seized existing untainted funds and new untainted funds that were being deposited

in the ordinary course of business. [ECF No. 81, PageID.660-61]. According to them, "the Government . . . illegally seized over $900,000 in Petitioners' assets and placed over $5,000,000 in holds on 9 accounts." [Id]. Since then, the Government claims to have lifted holds on all but two of third-party petitioner accounts: for $13,243.43 on one account belonging to Mostafa Afr ending in 6185 (the "Afr Account"), and for $392,663.25 on one Horizon Bank account ending in 4233 (the "Horizon Account"). [ECF No. 103, PageID.946].

Restaurant Group Petitioners claim that National Restaurant Chain No. 1 is a "90+ year old restaurant being forced to cease operations, leading to a loss of jobs and severe damages" due to the government's actions. [ECF No. 29, PageID.117]. All Third-Party Petitioners assert that the Government's actions have placed them under emergent circumstances, rendering them unable to pay expenses, employees or adequately operate due to the holds placed on accounts, which do not contain tainted funds, and seizures of "untainted" funds.

## III. Discussion

### A. Legal Framework Applicable to Pretrial Seizure of Potentially Forfeitable Property

The Supreme Court has long recognized the "strong governmental interest in obtaining full recovery of all forfeitable assets." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989). Forfeiture serves important punitive and deterrence functions, and forfeited property is often put to productive use in assisting

8

crime victims and improving communities damaged by criminal behavior. See *Kaley v. United States*, 134 S.Ct. 1090, 1094 (2014) (citing *Caplin & Drysdale*, 491 U.S. at 629–630).

In this case, the indictment alleges that the seized funds are subject to forfeiture under criminal forfeiture statute 18 U.S.C § 982(a)(7), which requires the forfeiture of all property "that constitutes or is derived, directly or indirectly, from gross proceeds traceable to" a "Federal health care offense." It also alleges that there is probable cause to believe that the seized funds are subject to forfeiture under 18 U.S.C. § 982(a)(1), which requires forfeiture from a defendant convicted of a federal money laundering offense of any property "involved in such offense, or any property traceable to such property." *Id*.

Criminal forfeiture proceedings under these provisions, including pretrial seizure of property subject to forfeiture upon conviction, are governed by 21 U.S.C. § 853. Under 21 U.S.C § 853(a), "any person convicted of a violation . . . shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation". At oral argument and in their pleadings, both the Government and the third-party petitioners appear to agree that the $1.445 million cashier's check has the requisite connection to Kazkaz's alleged criminal activity.

Broadly speaking, the government can seek protective orders in two contexts: before an indictment has been filed, or after. To obtain a pre-indictment protective order, the government must show, among other things, that "there is a substantial probability that the United States will prevail on the issue of forfeiture...." § 853(e)(1)(B). By contrast, under § 853(e)(1)(A), the indictment itself establishes the merits of the government's case, and courts may enter a protective order "upon the filing of an indictment ... alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture...". [2] *Id*. at § 853(e). Once a protective order has been entered, the statute provides no further avenues for inquiry into the property's forfeitability until disposition of the criminal charges on which the forfeiture is predicated.

A third-party is expressly precluded from intervening or bringing a separate suit to assert an interest in the forfeitable property prior to the entry of an order of forfeiture. 21 U.S.C. § 853(k) and (n). 21 U.S.C. § 853(k)(1) and (2) state: "Except as provided in subsection (n), no party claiming interest in property subject to forfeiture under this section may (1) intervene in a trial ... of a criminal case

---

[2] Upon a showing that other authorized forms of protective orders may not be sufficient to assure the availability of the property for forfeiture, the government may also request a warrant from a federal court authorizing the pretrial seizure of property subject to forfeiture "in the same manner as provided for a search warrant." 21 U.S.C. § 853(f). The court "shall" issue such a warrant upon determining that there is "probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture." *Id.*

involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States commencing the validity of his alleged interest in the property subsequent to the filing of an indictment ... alleging that the property is subject to forfeiture under this section." (Emphasis added).

§ 853(n) discusses procedures for a third party to assert its interest in forfeitable property only after a conviction and order of forfeiture have been entered. See 21 U.S.C. § 853(n)(1) and (2): "(1) Following the entry of an order of forfeiture under this section ... (2) [a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property...." (Emphasis added). Also, 21 U.S.C. § 853(n)(6) provides, in part: "If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence" a right to the property, "the court shall amend the order of forfeiture in accordance with its determination." (Emphasis added).

§ 853(c) highlights a post-conviction procedure for third parties asserting an interest in forfeitable property as well. It states that, after commission of the act giving rise to forfeiture of the property, any forfeitable property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States,

unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Some courts have recognized an exception to § 853(k)'s ban on third party intervention. Under § 853(e)(1)(A), third parties claiming an interest in restrained or potentially forfeitable property may "participat[e]" in the associated restraining order proceedings. *United States v. Real Prop. in Waterboro*, 64 F.3d 752, 755 (1st Cir. 1995). *Waterboro's* discussion of § 853(e)(1)(A) describes the parameters of a third-party hearing on an order restraining property listed in an indictment as forfeitable. It states that, the legislative history of § 853(e)(1)(A) "expressly limits the scope of arguments that can be raised by participants in a post-indictment § 853(e) proceeding." *Real Prop. in Waterboro*, 64 F.3d at 755. "For the purposes of issuing a restraining order, the probable cause established in the indictment ... is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based." *Id.* (citing 1984 U.S.C.C.A.N. at 3386) (Emphasis added). If the court elects to "hold a hearing subsequent to the initial entry of the [protective] order ... the court may at that time modify the order or vacate an order that was clearly improper (e.g., where information presented at the hearing shows that the property restrained was not among the property named in the indictment).

*Id.* However, the purpose of such a hearing is not to entertain challenges to the validity of the indictment. *Id*.

The First Circuit thought these "provisos" were meant to apply to both criminal defendants and third-party claimants. *Id*. This Court agrees, given that the purpose of a restraining order proceeding, is to preserve at-risk property for trial, not to determine whether the property should have been included in the indictment. Under § 853(e)(1)(A), parties claiming an interest in restrained or potentially forfeitable property may not use the restraining order proceeding to attack the indictment itself.

Against the background of § 853's complex statutory background, the Supreme Court has made clear that pretrial seizure, pursuant to 21 U.S.C. § 853, necessarily requires two probable cause findings: (1) that "the defendant has committed an offense permitting forfeiture;" and (2) that "the property at issue has the requisite connection to that crime." *Kaley*, 134 S.Ct. at 1095 (citing 21 U.S.C. § 853(a)); see also *United States v. Monsanto*, 491 U.S. 600, 615 (1989) (upholding constitutionality of pretrial seizure of criminal defendant's assets so long as it is "based on a finding of probable cause to believe that the assets are forfeitable"). Probable cause is an "objective standard requiring an analysis of the totality of the circumstances." *United States v. Jackson*, 415 F.3d 88, 91 (D.C.Cir.2005) (citing

13

authorities). It is "not a high bar," *Kaley*, 134 S.Ct. at 1103, and is instead "synonymous with fair probability." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An agent's affidavit may serve to establish probable cause that the property subject to forfeiture has the requisite connection to the underlying crime. *United States v. Kaley*, 579 F.3d 1246, 1259 (11th Cir. 2009) (the court may rely on grand jury's finding of probable cause, supplemented by the FBI case agent's probable cause affidavit). The government bears the burden in the first instance to show both probable cause prongs, including that the seized funds are traceable to the charged crimes. *United States v. Bikundi*, 125 F. Supp. 3d 178, 190 (D.D.C. 2015). Only upon meeting those two probable cause prerequisites is the government entitled to pretrial seizure "to preserve the availability of property" subject to forfeiture. 21 U.S.C. § 853(e)(1).

### B. Analysis

All the emergency motions seek an evidentiary/probable cause hearing, pursuant to the Fourth Amendment and the Fifth Amendment Due Process Clause to the United States Constitution, to establish traceability between the funds seized and the cashier's check. They also seek the return of property seized, pursuant to Fed. R. Crim. Pro. 41(g) ("Rule 41(g)"). Lastly petitioners request modification of the Restraining Order, pursuant to 21 U.S.C § 853(e).

With respect to all three emergency motions, the Government advances three principal arguments: (1) because of 21 U.S.C § 853(k)'s ban on third parties asserting an interest in forfeitable property, the Court lacks jurisdiction to decide the emergency motions; (2) the Court lacks authority to exercise equitable jurisdiction over the Rule 41(g) motions because there is an adequate remedy at law; and (3) petitioners have no standing to assert a "substitute assets" on Kazkaz's behalf. [ECF No. 103, PageID.947]. The Court will address each argument below.

**1. 21 U.S.C § 853 (k) Does Not Bar a Probable Cause Hearing or Consideration of the Third-Party Petitioners' Rule 41(g) Emergency Motions**

Before conducting a pretrial seizure of property, the Government must show—to a grand jury or to the Court—that probable cause exists to believe the defendant committed the crime giving rise to the forfeiture and that the property being seized is forfeitable. When this showing is made, no third party may contest the forfeiture until after a conviction and an order of forfeiture as to the property has been entered. When that time comes, a third party may move for return of property. 21 U.S.C § 853(k).

The Government concedes that probable cause is required before it may exercise pretrial restraint/seizure of potentially forfeitable funds, then it asserts that § 853(k) bars all the emergency motions. The Government misapprehends the procedural posture that precipitated the emergency motions. § 853(k) pertains to

15

instances where a third party challenges the forfeitability of property found—by a probable cause determination—to be traceable to a criminal defendant's unlawful conduct. If third party petitioners were contesting the forfeitability of funds found by probable cause to be traceable, the Court would likely be barred from considering their motions, unless they were filed in an ancillary proceeding after conviction had occurred and a final order of forfeiture had been entered.

To the contrary, the Government never petitioned the Court or a grand jury for a finding of probable cause related to the seized funds. Instead, it seized several third-party bank accounts and withdrew currency from them without bringing any forfeiture allegations related to those accounts before the Court. Wielding the Court's Restraining Order, the Government demanded immediate payment $1.445 million from National Restaurant Chain No. 1 and directed various financial institutions to place holds on bank accounts belonging to third party petitioners. The First Superseding Indictment and the Second Superseding Indictment make forfeiture allegations pertaining to accounts and funds held by criminal defendants, as well as the cashier's check for $1.445 million Kazkaz remitted to National Restaurant Chain No. 1. But neither indictment alleges that the accounts at issue in these motions—or the funds withdrawn from them—are traceable to the cashier's

check deposited in National Restaurant Chain No. 1's account 0852.[3] The indictment contains no forfeiture allegations whatsoever pertaining to the seized accounts, leaving the Court in doubt as to whether the Government has satisfied its minimal burden of establishing probable cause to believe the funds seized are traceable to the cashier's check. According to petitioners, the $1.445 million remitted to National Restaurant Chain No. 1 was expended by February 2023, before the Government filed the First Superseding Indictment in March 2023.[4] That the Government questions the veracity of petitioners' assertions does not furnish the requisite probable cause required to trigger § 853 (k)'s ban, such a finding must be made by a grand jury or by the Court.

Thus, where there is no forfeiture allegation in the indictment pertaining to the property seized or any probable cause determination based on those allegations, § 853 (k) cannot be said to bar pretrial consideration motions for return on seized

---

[3] See *Supra* at pg. 11, the funds withdrawn from the accounts at issue are: (1) $67,344.93 from Restaurant Group Petitioner's Savings Account ending in 0852; (2) $54,499.93 from Restaurant Group Petitioner's Checking Account ending in 7885; (3) $285,000 from Restaurant Group Petitioner's Operating Account ending in 7893; and (4) $18,608.89 from Restaurant Group Petitioner's Holding Account ending in 7935; (5) $102,000 from Non Restaurant Group Petitioner's Account ending in 0811; and (6) a $392,663.25 hold on Horizon Bank Account ending in 4223. However, it is unclear whether the Horizon Bank Account belongs to either group of petitioners.

[4] The First Superseding Indictment was the first indictment which identified the $1.445 million cashier's check as being remitted to National Restaurant Chain No. 1.

property. See *United States v. Durante*, No. 11–277 (SRC), 2012 WL 2863490, at *1 (D. N.J. July 11, 2012) ("Ordinarily, the inclusion of the forfeiture allegation in the indictment is sufficient to bar the return of money unless and until a trier of fact determines whether the funds are subject to forfeiture."). See also *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir.2005) (explaining that § 853(k) "bars third parties ... from bringing independent suits against the United States *once an indictment alleging that the property is subject to forfeiture has been filed*") (emphasis added). In *United States v. Hills*, a district court in the Sixth Circuit held that a criminal defendant seeking to contest forfeiture of funds seized from a safe in his residence would have to wait until the end of the criminal proceedings. *United States v. Hills*, No. 1:16CR329, 2018 WL 1621088, at *7 (N.D. Ohio Apr. 4, 2018). It reasoned that the funds at issue were "clearly and repeatedly" identified in the indictment as subject to forfeiture. *Id.* at *8.

The Government clearly believes that it was authorized by the Restraining Order to seize third party assets. But the Court entered the Restraining Order under § 853(e)(1)(A), which requires an indictment to establish probable cause before the court may enter a post-indictment order. As far as it concerns funds seized from third party bank accounts, the indictment does not establish the probable cause—or traceability—required under 853(e)(1)(A) to make the Restraining Order operable against third party accounts.

On June 1, 2023, the Government filed a First Forfeiture Bill of Particulars "to supplement and clarify the forfeiture allegations contained in the Second Superseding Indictment and to provide notice of specific property the government intend to forfeit upon conviction." [ECF No. 102, PageID.939]. That filing listed all the accounts referenced *supra* at note 3 and describes them as traceable to Counts 5-10. But, as stated before, the grand jury did not return an indictment with allegations pertaining to these accounts, and the Government cites no authority showing that it may supplement allegations to the indictment via a bill of particulars in order to establish probable cause with respect to those allegations. See generally, *United States v. Salisbury*, 983 F.2d 1369, 1376 (6th Cir. 1993) ("A bill of particulars cannot be used to save an otherwise invalid indictment"); and *United States v. Sturman*, 951 F.2d 1466, 1479 (6th Cir.1992).[5]

The Government cites *Brown* in support of its "lack of jurisdiction under 853(k)" argument. In *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012), a

---

[5] See also *Russell v. United States*, 369 U.S. 749, 770 (1962) ("[t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. . . This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury unless the change is merely a matter of form."). See also *United States v. Budd*, 496 F.3d 517, 537 (6th Cir. 2007) (Cook, J.) (quoting *Russell* 369 U.S. at 770). Adding forfeiture allegations as to several bank accounts or third parties is not merely a matter of form.

plaintiff filed a motion for return of currency seized from a safe by the Government. The currency was subject to forfeiture in the criminal prosecution of her ex-son-in-law. *Id*. at 551. The plaintiff argued that the funds subject to forfeiture could not be forfeited criminally because the government failed to include them in an indictment. *Id*. The district court dismissed the suit, concluding that it lacked jurisdiction, pursuant to 21 U.S.C. § 853(k)(2), to decide the Rule 41(g) motion. *Id*. at 552. The Sixth Circuit affirmed, relying on the grand jury finding that probable cause existed to believe the money was forfeitable and reasoning that, "[b]ecause [plaintiff] brought th[e] suit after the government filed the indictment and bill of particulars in [the ex-son-in-law's] criminal case, her suit is barred by § 853(k)(2). *Id*.

*Brown* illustrates the salient distinction here: the currency the government seized from the third-party accounts was *not* found by a grand jury to be forfeitable or in any way traceable to the cashier's check or criminal activity. (Emphasis added). In fact, it is not clear that the grand jury considered any allegations pertaining to third party accounts when it returned the indictment. The third parties do not challenge the grand jury's probable cause determination as it relates to the traceability of the $1.445 million to Kazkaz's criminal activity. And, as alleged in their motions, the petitioners do not claim interests in property "subject to forfeiture" within the meaning of 21 U.S.C. § 853(k)(1) and (2).

The Court finds that, § 853(k)'s bar on third party pretrial motions asserting an interest in property subject to criminal forfeiture does not become operable unless and until a grand jury or a court finds probable cause to believe that the funds seized and the accounts frozen by the Government are traceable to the forfeitable property described in the indictment or the criminal activity itself.[6]

## 2. The Court's Equitable Jurisdiction

Under Rule 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. . .. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings."

When there are no criminal proceedings against the movant, a court may exercise its civil equitable jurisdiction over a Rule 41(g) motion. See *United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 923 (6th Cir. 2000). Civil

---

[6] § 853(k) does not bar consideration of the Rule 41(g) motions. However, the Court will ultimately decline to exercise equitable jurisdiction over them. For these reasons, the Court will not determine whether probable cause exists to permit the seizure in light of the two affidavits the Government submitted by FBI Forensic Accountant Giorgio Bertucci or the affidavit of Adam Akeel, counsel for third party petitioners. If petitioners have due process concerns due to the lack a formal probable cause hearing on the issue of traceability, they may raise them in the associated civil forfeiture action and petition of immediate release of the property.

equitable jurisdiction is discretionary; a court should exercise it with "caution and restraint." *In re Seizure of $100,622.44 in U.S. Currency*, No. 19-MC-51236, 2019 WL 6776031, at *2 (E.D. Mich. Dec. 12, 2019) (citing *$8,050.00 in U.S. Currency v. United States*, 307 F. Supp. 2d 922, 925 (N.D. Ohio 2004). Four factors guide the analysis of whether equity demands the Court exercise jurisdiction:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property [they] want [ ] returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of [their] grievance.

 See *In re Search of 32900 Five Mile Rd.*, Nos. 13-50293, 15-50512, WL 3742589, at *4 (E.D. Mich., June 15, 2015) (citing *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993)). If an adequate remedy at law exists, the fourth factor is dispositive: a movant is not entitled to equitable relief, and a court must decline to exercise jurisdiction. *Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989) (recognizing that "where the government has brought a civil forfeiture action a claimant may not use Rule 41 to bypass the statutory procedure provided for"). See also *Brown*, 692 F.3d at 552 (noting that a claimant is not entitled to equitable remedy in 41(g) motion because an adequate remedy at law existed under 853(n)).

On June 8, 2023, the Government filed a Complaint for Forfeiture ("Forfeiture Complaint") in the *in rem* civil forfeiture action captioned *United States v. $67,344.93 remitted to the United States Marshals Service from Chase Account*

22

*ending in 0852, et al*., [Dkt # 23-cv-11368]. Originally assigned to Judge Jonathan J.C. Grey, the case was reassigned to the undersigned on June 14, 2023. The Forfeiture Complaint lists all the funds and account holds still at issue in the Emergency Motions and referenced *supra* at note 3.

Congress enacted the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, in 2000 to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." H.R.Rep. No. 106–192, at 8 (1999); *United States v. Contents of Accts*., 629 F.3d 601, 607 (6th Cir. 2011). The provision outlines the circumstances under which civil forfeiture claimants are entitled to *immediate* release of seized property and the procedure to be followed in obtaining such relief. (Emphasis added). To establish release of seized property, the claimant must demonstrate that the following requirements, listed in paragraph (1), are satisfied:

> (A) the claimant has a possessory interest in the property;
>
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
>
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>
> (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1)(A)-(E). *Id*. at Paragraph (8) denies relief where the property:

> (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;
>
> (B) is to be used as evidence of a violation of the law;
>
> (C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or
>
> (D) is likely to be used to commit additional criminal acts if returned to the claimant.

*Id*. § 983(f)(8). Procedurally, § 983(f) requires that the claimant first seek relief directly from the appropriate official. *Id*. § 983(f)(2). If the property is not released within fifteen days, the claimant may then file a petition with the appropriate district court detailing: "(i) the basis on which the requirements of paragraph (1) are met; and (ii) the steps the claimant has taken to secure release of the property from the appropriate official." *Id*. § 983(f)(2)–(3). If the petition is granted, the statute also authorizes the court to "enter any order necessary to ensure that the value of the property is maintained while the forfeiture action is pending." *Id*. § 983(f)(7).

§ 983(f) provides a detailed and comprehensive mechanism for obtaining immediate release of seized property, which is the precise remedy requested by all third-party petitioners. Although it also strictly limits the situations in which such relief is available, it provides the remedy petitioners seek. Thus, it is an adequate remedy at law and the Court declines to exercise equitable jurisdiction over the portions of Emergency Motions that seek the return of property. It does not matter that the petitioners filed their motions before the Government commenced the civil forfeiture proceedings. *see United States v. Bitoff,* No. 2:22-MC-51648, 2023 WL 4061660, at *3 (E.D. Mich. Mar. 21, 2023) (quoting *Mercedes Benz of St. Clair Shores v. Drug Enforcement Admin.*, No. 19-11954, 2019 WL 6877889, at *3 (E.D. Mich. Dec. 17, 2019) ("'[I]t does not matter in this analysis that Plaintiff filed its case before the government initiated the [Civil Asset Forfeiture Reform Act of 2000] proceedings.'").

Next the Court will discuss the portions of the Emergency Motions that request modifications of the Restraining Order. The Court does not engage in equitable jurisdiction by modifying Restraining Order entered pursuant to 853(e)(1)(A), as it is not an equitable remedy, unlike ordering return of property. Thus, despite the Court's abstention from exercise equitable jurisdiction, it is free to consider the merits of the request for modification of the Restraining Order.

### 3. Modifications to the Restraining Order

Petitioners seek modification of the Restraining Order "to comply with the Fourth Amendment," by either "1) removing the overbroad language that is being used by the Government to exercise unfettered discretion to seize, and continue to seize, Petitioners' assets, (despite the absence of a probable cause determination by either the grand jury or this Court); or 2) modify the overbroad language to specifically identify the assets to which a probable cause determination has been made." [ECF No. 81, PageID.661].

As stated above, for the Restraining Order to be operable against the funds of third parties, there must be probable cause to believe the third-party accounts or funds therein are traceable to forfeitable funds. See Restraining Order [ECF No. 28, PageID.109] (it designates for restraint "All Funds on Deposit Funding and Attributable to that Cashier's Check; and (in the event that check has been deposited) [3] All Funds up to $1,445,000 traceable to that Cashier's Check"). Such a probable cause determination—made by a grand jury or by this Court—regarding traceability is required. See *Kaley v. United States*, 571 U.S. 320, 320 (2014) (citing *United States v. Monsanto*, 491 U.S. 600 (1989)). Without sufficient nexus and traceability to the forfeitable funds—determined by the Court or grand jury under probable cause standards—the Government severely exceeds the scope of the Restraining Order by seizing third party assets.

26

The Court will modify the Restraining Order for clarification and filed on the docket of this case a modified restraining order within **SEVEN (7) days** of this order. However, as stated above, any equitable relief that could result from such a modification must be petitioned for in the associated civil forfeiture action.

## IV.   Conclusion

All three Emergency Motions are **DENIED WITHOUT PREJUDICE** in as much as they request an evidentiary hearing and return of the property. The request for modification of the Restraining Order is **GRANTED**. If Third Party Petitioners wish to refile their motions or to file different motions, they must do so in the associated civil forfeiture action.

**SO ORDERED.**

Dated:  June 28, 2023                                    /s/Gershwin A. Drain
                                                         GERSHWIN A. DRAIN
                                                         United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 28, 2023, by electronic and/or ordinary mail.
/s/ Kelly Winslow for Teresa McGovern
Deputy Clerk