UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

      Plaintiff,                          CRIMINAL NO. 23-cr-20022

v.                                     HON. GERSHWIN A. DRAIN

MUSTAFA HARES,

      Defendant.

---

**Government's Sentencing Memorandum**

---

Mustafa Hares earned $30,000 per month at the time of his arrest working as a board-certified surgeon. Apparently unsatisfied by his sizeable income, Hares lent his medical billing expertise to Mohamad Kazkaz by fraudulently claiming that he supervised psychotherapy services that were – in fact – never rendered. Medicare claims illustrate his cohort Kazkaz submitted $4.3 million in false claims to Medicare which netted Hares more than $600,000. Hares's greed deprived Medicare beneficiaries of much-needed funds and further undermined the confidence in America's largest government health care program designed to care for seniors and the disable. Mustafa Hares must be sent to prison to deter

others motivated by greed who are tempted to steal from the America's working men and women.

Hares's advisory guideline range is 46-57 months' imprisonment. For the reasons discussed below, the government recommends a sentence within the guidelines to achieve the aims of the Sentencing Reform Act of 1984 (18 U.S.C. § 3553(a)).

## I.      Facts and Procedural History

A grand jury charged Dr. Mustafa Hares with conspiracy to commit health care fraud. He pleaded guilty without a Rule 11 Plea Agreement on October 20, 2025. Medicare claims data reflects that Hares's National Provider Identification (NPI) number was used to submit more than $7.7 million in claims for psychotherapy services which were not rendered. (PSR ¶ 20). These phony claims resulted in Hares's making more than $600,000 as a result of his collusion with Mohamad Kazkaz.

Hares paints himself as an unwitting dupe who merely failed to verify that Medicare beneficiaries had received psychotherapy visits purportedly provided by other health care providers. (ECF No. 340, Hares Sentencing Memo. PgID 2243). Hares's role was not confined to "failing to exercise the oversight and due diligence required of him." He was a board-surgeon who lacked training in psychotherapy, but he was more than willing to use his NPI to further the scheme Kazkaz led.

Hares's own text messages illustrate that he was involved in the creation of bogus patient progress notes. These progress notes are a necessary element of Medicare billing. In the event of an audit, Medicare contractors would review patient progress notes to determine the veracity claims submitted by Kazkaz. Hares told Kazkaz that he (Hares) would draft the patient progress notes in a manner "to meet the new requirements of Medicare." (Exhibit 1, Hares text exchanges with Kazkaz). The text exchanges illustrate Hares was aware that the Kazkaz-led scheme relied upon a crew of scriveners located in Mexico who dummied up files to further the scheme's ends.

## II.    Section 3553(a) Factors

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a).  *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).

Thus, the starting point here is 46-57 months' imprisonment. (PSR ¶ 65.)

### a.  The Nature and Circumstances of the Offense

Hares traded his medical license in order to profit from a scheme designed by Mohamad Kazkaz, which resulted in the submission of more than $7.7 million in fraudulent claims to Medicare. Medicare operates as a trust-based system which relies upon the credentialed medical providers such as Hares in processing billions of claims for American citizens on an annual basis. Some estimates claim that more than "tens of billions" is lost every year due to bad actors like Hares.[1] Medicare lacks the resources to verify the legitimacy of each claim it pays. The text exchanges illustrate that Hares, using the cloak of legitimate medicine, provided Kazkaz with necessary insight to avoid detection by Medicare.

Congress set the statutory maximum sentence at 10 years' imprisonment to reflect the seriousness of the offense.

### b.  History and Characteristics of the Defendant

Unlike many of the defendants who appear for sentencing, Mustafa Hares enjoyed the benefits of an advanced education, a lack of substance abuse, and a most-generous stream of income – outside of the $600,000 he reaped from his conspiracy with Kazkaz. His ability to earn significant sums apart from criminal conduct,

---

[1] The National Health Care Anti-Fraud Association (NHCAA) estimates that the financial losses due to health care fraud are in the tens of billions of dollars each year. A conservative estimate is 3% of total health care expenditures, while some government and law enforcement agencies place the loss as high as 10% of our annual health outlay, which could mean more than $300 billion.

however, was insufficient for Hares. Without unscrupulous credentialed medical provides like Hares, the scheme led by Kazkaz could not have succeeded.

### c. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense

This is a serious offense and Hares's abused his position of trust to steal from the American taxpayer. They are his victims in this offense. Such schemes also make it more difficult for deserving claimants to receive needed benefits.

A custodial sentence is needed to reflect the seriousness of the offense, promote respect for the law, and ensure a just punishment.

### d. Adequate Deterrence and Protection of the Public

Medicare fraud is both highly lucrative and frequently undetected. It is this combination that makes general deterrence a particularly important objective in this case. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Furthermore, as the Sixth Circuit has recognized, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (citations omitted).

An unambiguous message of deterrence should be sent to others who might be tempted to steal significant amounts of government benefits: a substantial prison sentence awaits you.

**e. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner; Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities**

The Bureau of Prisons has the expertise to classify and send Hares to the appropriate facility. A sentence imposed within the guidelines range would avoid any unnecessary sentencing disparity.

## III. Restitution

Under the Mandatory Victims Restitution Act, restitution is required as Hares's offense involved fraud and deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). Medicare claims data reflects that Medicare sustained an actual loss of $4,883,380 in losses attributable to false claims submitted under Hares's NPI number. (Exhibit No. 2).

## IV. Conclusion

Mustafa Hares victimized honest taxpayers and Medicare beneficiaries from whom he stole. For the reasons discussed above, the Court should impose a sentence of 46-57 months to achieve the requirements of the Sentencing Reform Act of 1984 (18 U.S.C. § 3553(a)).

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

s/Philip A. Ross
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9790
E-Mail: Philip.Ross@usdoj.gov

Dated: April 13, 2026

**Certificate of Service**

I certify that on April 13, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Sanford Schulman
Attorney for Mustafa Hares

I also certify that I will, on today's date, email a copy of the foregoing document to Julie Grewe, the assigned probation officer in this matter.

s/Philip A. Ross
Philip A. Ross
Assistant U.S. Attorney
United States Attorney's Office